## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION, | ) ) ) |
| Plaintiff, | ) C.A. No. ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| CARRIER GLOBAL CORPORATION, | ) ) |
| Defendant. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Zest Labs, Inc. ("Zest" or "Plaintiff"), by its attorneys, allege as follows for its Complaint for Patent Infringement against Carrier Global Corporation, including its Carrier Transicold division ("Carrier" or "Defendant"):

## INTRODUCTION

1. The global food waste crisis costs the world an estimated $540 billion every year—and a broken cold chain is one of its biggest drivers. Approximately one-third of all food produced worldwide is lost or wasted annually, representing an enormous economic loss and a profound humanitarian and environmental failure. When shippers lack real-time visibility into the status of their cargo, perishable goods spoil in transit before reaching their destination. Zest developed breakthrough solutions to these cold chain deficiencies. Zest's inventors pioneered a cloud-connected, centralized approach to actively managed cold-chain logistics: a system that dynamically monitors perishable goods in real time, associates environmental conditions with product-specific profiles, and autonomously issues corrective commands to refrigeration units the moment those conditions drift outside acceptable ranges. These are not incremental improvements—they represent a fundamental advance in how perishable goods are transported. Before Zest's inventions, refrigerated transport systems operated blindly. They maintained a fixed

temperature setpoint but had no ability to associate that setpoint with the specific tolerance profile of the product being carried, and no mechanism to issue corrective commands automatically before a product tolerance was exceeded. Shippers could not know that a shipment had been compromised until after delivery—when the damage was already done and the food was already lost. Zest's patented system transformed that paradigm entirely. By linking each container to a product-specific profile, continuously comparing real-time conditions against that profile, and autonomously triggering corrective action the moment conditions drift, Zest's technology catches and corrects cold chain failures while the shipment is still in transit—before spoilage occurs. The result is a dramatically higher rate of product arriving in saleable condition, a longer effective delivery window, reduced spoilage losses for shippers, and lower costs for retailers and consumers. Pre-patent cold chain systems simply cannot replicate these outcomes.

2.      The United States Patent and Trademark Office ("USPTO") recognized the novelty and importance of these inventions, awarding Zest a family of six patents protecting the methods and systems at the heart of actively managed cold-chain delivery. The value of these patents is commensurate with the magnitude of the problem they solve: saving perishable product that would otherwise be lost represents enormous economic benefit to shippers, retailers, and consumers worldwide. That value also translates directly into market leverage. Products that incorporate Zest's patented technology deliver superior cold-chain performance that pre-patent systems cannot match—and command a decisive competitive advantage as a result. Manufacturers who use Zest's inventions without a license exploit that advantage illegitimately. They reap the commercial rewards of Zest's innovations and generate profits to which they are not entitled.

3.      Carrier—one of the world's largest manufacturers of refrigeration and transport temperature control systems—built and commercialized its Lynx Fleet telematics platform and

2

APX™ Control System with IntelliSet™ product profiles in a manner that directly embodies these patented inventions. Carrier has deployed this infringing technology across its entire trailer refrigeration unit manufacturing line since at least 2023, representing a massive and ongoing unauthorized use of Zest's intellectual property. By doing so, Carrier has gained an unjustified market advantage over competitors whose products rely on pre-patent cold chain technology. Carrier's infringing systems outperform pre-patent cold chain systems precisely because they use Zest's inventions, allowing Carrier to win sales, charge premium prices, and earn profits it has no right to claim. Critically, Carrier has been aware of Zest's patent family since at least April 2020—having itself cited a member of that family before the USPTO—yet chose to continue infringing without license, design-around, or justification. Zest brings this action to stop Carrier's willful infringement, recover the substantial damages it has suffered, and obtain the relief necessary to protect the value of the innovations it worked years to develop.

## <u>NATURE OF THE ACTION</u>

4.      This is an action for patent infringement arising under the patent laws of United States, Title 35, United States Code and Title 28, United States Code based upon Carrier's direct and indirect infringement of Zest's patents, including U.S. Patent No. 10,445,684 (Ex. A-1, "the '684 patent"); U.S. Patent No. 10,423,918 (Ex. B-1, "the '918 patent"); U.S. Patent No. 11,037,092 (Ex. C-1, "the '092 patent"); U.S. Patent No. 11,037,093 (Ex. D-1, "the '093 patent"); U.S. Patent No. 11,037,094 (Ex. E-1, "the '094 patent"); and U.S. Patent No. 12,008,509 (Ex. F-1, "the '509 patent") (collectively, the "Patents-in-Suit").

## <u>THE PARTIES</u>

5.      Plaintiff Zest Labs, Inc. is a corporation organized under the laws of Nevada with a place of business at 2349 Bering Drive, San Jose, California, 95131.

6.      Upon information and belief, Defendant Carrier is a corporation organized under the laws of Delaware with a principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, et seq. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Carrier consistent with the requirements of the Due Process Clause of the United States Constitution because Carrier is incorporated in Delaware and therefore resides in this Judicial District, it is doing business in Delaware, and it has continuous and systematic contacts with Delaware. Upon information and belief, Defendant derives substantial revenue from products marketed, sold, distributed, and/or used in Delaware. Upon information and belief, Defendant maintains a registered agent for service of process in this Judicial District. Defendant has availed itself of the rights, benefits, and privileges of this Judicial District by, among other things, filing and prosecuting suits for patent infringement in this District. *See, e.g.*, *Carrier Global Corp. v. EcoFactor, Inc.*, No. 21-cv-00328-MN (D. Del. Mar. 3, 2021).

9.      Venue is proper in this District pursuant to at least 28 U.S.C. § 1400. As noted above, Carrier is incorporated in the State of Delaware and therefore resides in this State under §1400(b).

## BACKGROUND

I.      **The Patents-in-Suit**

A. Overview

10.      The Patents-in-Suit are all members of a single patent family that claim priority to the same provisional patent application, Provisional Application No. 62/140,425, filed March 30,

4

2015. As members of the same family, the Patents-in-Suit share a common specification and common inventorship.

11.     The Patents-in-Suit are directed to methods, systems, and computer program products designed to facilitate a logistics network that uses refrigeration to provide uninterrupted, temperature-controlled transport and storage of perishable goods, such as certain foods, pharmaceuticals, and biopharmaceuticals. In certain embodiments of the inventions of the Patents-in-Suit, a centralized computer system determines preferred ranges of conditions for a given packaged product (such as temperature and humidity levels), monitors those conditions in real-time throughout the entire delivery process, and signals alarms and/or takes other corrective action when the conditions of the container fall outside of the preferred ranges.

12.     As discussed in the patent specification, supply chain logistics prior to the inventions of the Patents-in-Suit suffered from numerous short-comings, as follows: "[S]upply chains are becoming more and more complex as products are shipped over longer distances and across international boundaries. For products that are sensitive to time, temperature, humidity, etc., or otherwise considered perishable products, there is a challenge in ensuring the products are managed properly, arrive in a desirable condition and within a defined delivery time. Often the impact of mishandling is not visually apparent, and therefore invisible to the receiver without product condition monitoring throughout distribution." Ex. A-1, '684 patent at 5:44-53.

13.     Further, "Even with product condition monitoring, those shipping products are currently unable to utilize product data collected during the shipping process until after the product has been delivered. Therefore, those shipping products may not realize that a shipment of perishable products has surpassed a product tolerance until after it has been delivered, e.g., after receipt, upon their inspection." *Id.*, at 5:44-60.

14. The inventions of the Patents-in-Suit solved these problems, as further discussed in the specification: "In sharp contrast to the foregoing shortcomings, some of the embodiments described herein may include associating the control of a product container (also referred to herein as a delivery bag in some approaches) with a product profile. Moreover, the process of packaging, tracking, delivering, etc. the product container and/or products stored therein may be controlled from a centralized location. The centralized location may be connected to each of the product containers using a real-time analytic software application (e.g., using a Cloud-based network)." *Id.*, at 5:61 – 6:3.

B. The Patents

15. On October 15, 2019, the USPTO duly and lawfully issued the '684 Patent, entitled "Actively managed food delivery." The '684 Patent claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '684 Patent. A true and correct copy of the '684 is attached hereto as Exhibit A-1.

16. On September 24, 2019, the USPTO duly and lawfully issued the '918 Patent, entitled "Actively managed food delivery." The '918 Patent is a continuation of the '684 Patent and claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '918 Patent. A true and correct copy of the '918 is attached hereto as Exhibit B-1.

17. On June 15, 2021, the USPTO duly and lawfully issued the '092 Patent, entitled "Actively managed food delivery." The '092 Patent is a continuation of the '684 Patent and claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '092 Patent. A true and correct copy of the '092 is attached hereto as Exhibit C-1.

18.    On June 15, 2021, the USPTO duly and lawfully issued the '093 Patent, entitled "Actively managed food delivery." The '093 Patent is a continuation of the '684 Patent and claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '093 Patent. A true and correct copy of the '093 is attached hereto as Exhibit D-1.

19.    On June 15, 2021, the USPTO duly and lawfully issued the '094 Patent, entitled "Actively managed food delivery." The '094 Patent is a continuation of the '684 Patent and claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '094 Patent. A true and correct copy of the '094 is attached hereto as Exhibit E-1.

20.    On June 11, 2024, the USPTO duly and lawfully issued the '509 Patent, entitled "Actively managed food delivery." The '509 Patent is a continuation of the '092 Patent and claims priority to Provisional Application No. 62/140,425, filed March 30, 2015. Zest owns the entire right, title and interest in and to the '509 Patent. A true and correct copy of the '509 is attached hereto as Exhibit F-1.

## III.    The Accused Instrumentalities

21.    As used throughout this Complaint, the "Accused Instrumentalities" refers to Carrier's Lynx Fleet telematics solution, including its integration with its APX™ Control System, IntelliSet™ product profiles, EverFRESH® Active Controlled Atmosphere System, Lynx Logix container telematics, and Sensitech monitoring platform in Carrier Transicold refrigeration units. The Accused Instrumentalities together perform the methods and operate as the systems claimed in the Patents-in-Suit, as shown in the representative claim charts attached hereto as Exhibit Nos.

A-2, B-2, C-2, D-2, E-2, and F-2, which are incorporated by reference herein in their entirety. The functions performed by each component of the Accused Instrumentalities is as follows:

(i)    **Lynx Fleet telematics solution** — The central hub of the system. It is the overarching IoT, machine learning, and analytics platform that monitors connected refrigeration units from anywhere in the world. It receives real-time data (temperature, location, unit status) through a centralized data stream, serves as the integration point for all other components, and enables two-way remote control—including remote setpoint adjustment, operating mode changes, and defrost instructions.

(ii)    **APX™ Control System** — The onboard electronic control unit physically installed in each transport unit. It receives and executes commands issued by the Lynx Fleet platform, translates remote instructions into physical adjustments to the refrigeration unit's operation (e.g., switching between start/stop and continuous run modes), and is the mechanism through which IntelliSet profiles are applied and updated remotely.

(iii)    **IntelliSet™ product profiles** — A library of over 40 pre-configured product-specific templates stored within the APX Control System. Each profile specifies the ideal temperature setpoints, defrost intervals, minimum runtime parameters, and out-of-range tolerances for a given commodity (e.g., apples, ice cream, cheese). These profiles operationalize the concept of "preferred ranges that change over time by predefined amounts per unit time" at the core of the patent claim.

(iv)    **EverFRESH® system** — An active controlled-atmosphere subsystem that works in conjunction with the Lynx Fleet platform to extend produce shelf life beyond what refrigeration alone provides. It generates high-purity nitrogen to displace oxygen and manages the balance of $O_2$, $CO_2$, and $N_2$ inside the container using time-varying setpoints.

Sensors monitor atmospheric composition in real time and signal the container unit controller to adjust accordingly.

(v)    **Lynx Logix™ container telematics** — A container-specific layer of the Lynx ecosystem focused on distribution intelligence. It applies AI and machine learning to predict, prevent, and resolve distribution problems—including determining prioritized delivery schemes based on food product history (e.g., which shipment has been in transit longest), improving on-time delivery, and reducing product loss. It integrates with Transportation Management Systems for operational dispatch.

(vi)    **Sensitech platform** — An end-to-end supply chain visibility and analytics solution operating as a monitoring and decision-support layer. It provides complete cargo transparency from origin to destination, enables evaluation of food product condition history, and surfaces data insights to identify quality gaps. Its analysis feeds into the system's determination of whether products are safe and desirable for delivery—and supports the issuance of hold or stop-delivery commands when they are not.

22.    According to Carrier, "All Carrier Transicold trailer units manufactured since 2023 come equipped with Lynx Fleet hardware."[1]

23.    Carrier describes the Lynx Fleet system as a "telematics solution [which] intelligently monitors connected container refrigeration solutions with real-time insights, predictive maintenance and over-the-air commands. Designed for shipping lines, fleet managers and service technicians, it enhances efficiency through IoT-driven data centralization and GPS tracking. Lynx Fleet supports Carrier fleets and mixed fleets, integrating with wireless networks

---

[1] Crosspoint Power & Refrigeration, *Lynx Tracking with Lynx Fleet Telematics*, https://www.crosspointpowerandrefrigeration.com/carrier-reefer-units-parts/lynx-fleet-telematics/ (last visited June 23, 2026).

for cargo visibility and operations efficiency."[2] A Carrier graphic depicting the overall system is

shown below[3]:



24.    As described by an authorized Carrier dealer, "Lynx Fleet is more than a GPS

tracker—it's a comprehensive telematics system tailored for refrigerated transport. Gain deep

insight into unit performance and cargo conditions while improving oversight and

responsiveness."[4] For example, the Accused Instrumentalities determine preferred ranges for

---

[2] Carrier, *Lynx™ Fleet Container Telematics*, https://www.carrier.com/us/en/cold-chain/container/data-tools/lynx-fleet/ (last visited June 23, 2026).
[3] Carrier, Lynx – The Connected Cold Chain, https://www.carrier.com/carrier/en/worldwide/media/The-Connected-Cold-Chain-Lynx_tcm933-147249.pdf (last visited June 23, 2026).
[4] Crosspoint Power & Refrigeration, *Lynx Tracking with Lynx Fleet Telematics*, https://www.crosspointpowerandrefrigeration.com/carrier-reefer-units-parts/lynx-fleet-telematics/ (last visited June 23, 2026).

conditions (such as temperature and humidity) based on the type of product stored, as follows: determines preferred ranges for conditions (such as temperature and humidity) based on the type of product stored, as follows:[5]

> when a load of apples is going to be picked up, the operator simply selects "APPLES" from the IntelliSet menu; for cheese, "CHEESE" is selected; for ice cream, "ICE CREAM" is selected. With each selection, the APX Control System automatically re-programs the settings to provide the best temperature control, fuel economy, and performance for that particular product.[6]

25.    In addition, the Accused Instrumentalities continuously monitor sensor temperatures and compare them against setpoint data to determine if conditions are within preferred ranges. For example, the system has an "OUT OF RANGE ALARM" function where a value is entered that defines "the number of degrees away from setpoint the temperature may drift before it is considered Out-Of-Range."[7] This demonstrates that the system is continuously monitoring temperature and comparing it against a defined setpoint plus a tolerance to determine if it falls outside this range.

26.    Through their underlying control mechanisms, the Accused Instrumentalities send commands to the refrigeration unit (the environmental control unit) via the Lynx Fleet two-way command interface in response to out-of-range conditions. For example, the "OUT OF RANGE ALARM" feature is triggered when the temperature drifts beyond a specified number of degrees from the setpoint.[8] This alarm can lead to a "configured alarm or alarm and shutdown action."[9]

---

[5] Carrier Transicold, *X4™ 7700 Trailer and Rail Refrigeration Units: Operation and Service Manual, No. 62-12251 Rev. E*, https://cdn.xtralease.com/siteresources/docs/default-source/reefer-reference/carrier-x4-7700-operation-and-service-manual.pdf?sfvrsn=438e63b_1 at 3-5, 3-6 (last visited June 23, 2026).

[6] *Id.*, at 3-5.

[7] *Id.*, at 3-26.

[8] *Id*.

[9] *Id*.

11

The "shutdown action" or other "action" is the result of a command sent by the computer system to the environmental control unit (e.g., the refrigeration unit) to alter its operation or cease functioning, directly in response to a determined out-of-range condition. This functionality is a direct consequence of the system determining that conditions are outside the preferred range.

27.     The functionality of the Accused Instrumentalities is discussed in more detail in the representative claim charts attached hereto as Exhibit Nos. A-2, B-2, C-2, D-2, E-2, and F-2, which are incorporated by reference herein in their entirety. As discussed below, each representative claim chart describes how, as non-limiting examples, the elements of at least exemplary claim 1 of each of the Patents-in-Suit are met by the Accused Instrumentalities. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that the Accused Instrumentalities have met and currently meet the elements of one or more claims of each of the Patents-in-Suit.

**IV.    Carrier's Prior Knowledge of the Patents-in-Suit**

28.     Carrier has had actual knowledge of the '684 patent and its claims since at least April 3, 2020, because, during the course of Carrier's prosecution of its own U.S. Patent No. 11,530,849, Carrier cited Zest's U.S. Pub. 2016/0292634 to Mehring et al. (the "Mehring patent publication") in an Information Disclosure Statement ("IDS") dated April 3, 2020. *See* Exhibit G, p. 3 (Carrier IDS). The Mehring patent publication had previously issued as the '684 patent on October 15, 2019.

29.     On information and belief, Carrier actively monitored the publicly available United States patent applications and granted patents in the '684 patent family because Carrier was aware that the patent family is relevant to Carrier's technology—as evidenced by Carrier citing the '684 Patent in its IDS.

12

30.    On information and belief, through its patent monitoring activities, Carrier had actual knowledge of the application that granted as the '918 Patent at the time the IDS was filed because the application published as US Publication 2019/0220810 on July 18, 2019, which is prior to the date of the IDS.

31.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the '918 Patent and its claims since at least September 24, 2019, the day on which the '918 patent issued.

32.    On information and belief, through its patent monitoring activities, Carrier had actual knowledge of the application that granted as the '092 Patent at the time the IDS was filed because the application published as US Publication 2019/0220809 on July 18, 2019, which is prior to the date of the IDS.

33.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the '092 Patent and its claims since at least June 15, 2021, the day on which the '092 patent issued.

34.    On information and belief, through its patent monitoring activities, Carrier had actual knowledge of the application that granted as the '093 Patent at the time the IDS was filed because the application published as US Publication 2019/0213536 on July 11, 2019, which is prior to the date of the IDS.

35.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the '093 Patent and its claims since at least June 15, 2021, the day on which the '093 patent issued.

36.    On information and belief, through its patent monitoring activities, Carrier had actual knowledge of the application that granted as the '094 Patent at the time the IDS was filed

13

because the application published as US Publication 2019/0213537 on July 11, 2019, which is prior to the date of the IDS.

37.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the '094 Patent and its claims since at least June 15, 2021, the day on which the '094 patent issued.

38.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the application that granted as the '509 Patent since at least September 23, 2021, the day on which the application published as US Publication 2021/0295255.

39.    On information and belief, through its patent monitoring activities, Carrier has had actual knowledge of the '509 Patent and its claims since at least June 11, 2024, the day on which the '509 patent issued.

40.    Carrier has had actual knowledge of the '684 patent and its claims, the '918 patent and its claims, the '092 patent and its claims, the '093 patent and its claims, the '094 patent and its claims, and the '509 patent and its claims, since at least the date on which this Complaint was filed and served on Carrier.

## COUNT I

### (Infringement of the '684 Patent)

41.    Plaintiff repeats and re-alleges the allegations set forth above.

42.    On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '684 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '684 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for

14

example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '684 patent.

43.     Attached to this Complaint as Exhibit A-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, each and every element of exemplary claim 1 is met by the Accused Instrumentalities, which is incorporated by reference herein in its entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that Carrier's Accused Instrumentalities have met and currently meet the elements of one or more claims of the '684 patent, as discussed herein and in Exhibit A-2.

44.     Carrier's infringement of the '684 patent has also been indirect.

45.     On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '684 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '684 patent.

46.     For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation, including without limitation, the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '684 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third

parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '684 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '684 patent. Carrier further provides information and technical support to its dealerships, customers and other end-users through the documents identified above with knowledge that such use constitutes an act of direct infringement of the '684 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '684 patent but took deliberate actions to avoid learning of these facts.

47.    Carrier has been aware of the inventions described and claimed in the '684 patent since at least April 3, 2020, for at least the reasons described above in paragraph 28.

48.    On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '684 patent. On information and belief, Carrier obtained this knowledge at least by April 3, 2020. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '684 patent or Carrier was otherwise willfully blind to that fact.

49.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '684 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '684 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale,

and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '684 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to at least the documents identified above, which instruct them how to assemble and use the components of the Accused Instrumentalities in ways that infringed/infringe the '684 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '684 patent. Carrier supplied and continues to supply these components with knowledge of the '684 patent and knowledge that the components were especially made for use in an infringing manner.

50.     On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '684 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '684 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '684 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them

how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '684 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '684 patent if such assembly and usage took place in the United States. Additionally, Carrier's components are especially made and/or especially adapted for use in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

51.     On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '684 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '684 patent (or would have infringed if those acts occurred within the United States).

52.     Moreover, on information and belief, Carrier's infringement of the '684 patent has been and continues to be willful and merits enhanced damages.

53.     For example, Carrier has known of the '684 patent and its infringement of the '684 patent as described herein.

54.     On information and belief, since knowing of the '684 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '684 patent.

55.     On information and belief, Carrier has made no attempt to design around the claims of the '684 patent.

56.     On information and belief, Carrier has no reasonable basis for believing that the claims of the '684 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

57.     Zest has been damaged as the result of Carrier's willful infringement.

58.     On information and belief, Carrier will continue to infringe one or more claims of the '684 patent unless and until it is enjoined by this Court.

59.     On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '684 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '684 patent.

## COUNT II

### (Infringement of the '918 Patent)

60.     Zest restates and realleges all the foregoing paragraphs as if fully stated herein.

61.     On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '918 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '918 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '918 patent.

62.     Attached to this Complaint as Exhibit B-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 are met by the Accused Instrumentalities, which is incorporated by reference herein in its

19

entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that the Accused Instrumentalities have met and currently meet the elements of one or more claims of the '918 patent, as discussed herein and in Exhibit B-2.

63.    Carrier's infringement of the '918 patent has also been indirect.

64.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '918 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '918 patent.

65.    For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation including the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '918 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '918 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '918 patent. Further, Carrier provides information and technical support to their dealerships, customers and other end-users, including the documents identified above with knowledge that such use constitutes an act of direct infringement of the '918 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high

probability that the use of the Accused Instrumentalities constitutes direct infringement of the '918 patent but took deliberate actions to avoid learning of these facts.

66.     On information and belief, Carrier has been aware of the inventions described and claimed in the '918 patent since its issuance on September 24, 2019, for at least the reasons described above in paragraphs 28-31.

67.     On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '918 patent. On information and belief, Carrier obtained this knowledge on or shortly after September 24, 2019. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '918 patent or Carrier was otherwise willfully blind to that fact.

68.     On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '918 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '918 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '918 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile

applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the Lynx Fleet system in ways that infringed/infringe the '918 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '918 patent. Carrier supplied and continues to supply these components with knowledge of the '918 patent and knowledge that the components were especially made for use in an infringing manner.

69. On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '918 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '918 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '918 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '918 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '918 patent if such assembly and usage took place in the

22

United States. Additionally, Carrier's components are especially made and/or especially adapted for use in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

70. On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '918 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '918 patent (or would have infringed if those acts occurred within the United States).

71. Moreover, on information and belief, Carrier's infringement of the '918 patent has been and continues to be willful and merits enhanced damages.

72. For example, Carrier has known of the '918 patent and its infringement of the '918 patent as described herein.

73. On information and belief, since knowing of the '918 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '918 patent.

74. On information and belief, Carrier has made no attempt to design around the claims of the '918 patent.

75. On information and belief, Carrier has no reasonable basis for believing that the claims of the '918 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

76. Zest has been damaged as the result of Carrier's willful infringement.

23

77.    On information and belief, Carrier will continue to infringe one or more claims of the '918 patent unless and until it is enjoined by this Court.

78.    On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '918 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '918 patent.

## COUNT III

### (Infringement of the '092 Patent)

79.    Zest restates and realleges all the foregoing paragraphs as if fully stated herein.

80.    On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '092 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '092 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '092 patent.

81.    Attached to this Complaint as Exhibit C-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 are met by the Accused Instrumentalities, which is incorporated by reference herein in its entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that the Accused Instrumentalities have met and currently meet the elements of one or more claims of the '092 patent, as discussed herein and in Exhibit C-2.

82.    Carrier's infringement of the '092 patent has also been indirect.

83.     On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '092 patent under 35 U.S.C. § 271(b) because it has induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '092 patent.

84.     For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation including the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '092 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '092 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '092 patent. Further, Carrier provides information and technical support to their dealerships, customers and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use the Lynx Fleet system with knowledge that such use constitutes an act of direct infringement of the '092 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '092 patent but took deliberate actions to avoid learning of these facts.

85.     On information and belief, Carrier has been aware of the inventions described and claimed in the '092 patent since its issuance on June 15, 2021, for at least the reasons described above in paragraphs 28-29, 32-33.

86.     On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '092 patent. On information and belief, Carrier obtained this knowledge on or shortly after June 15, 2021. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '092 patent or Carrier was otherwise willfully blind to that fact.

87.     On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '092 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '092 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '092 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the Accused Instrumentalities in ways that

26

infringed/infringe the '092 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '092 patent. Carrier supplied and continues to supply these components with knowledge of the '092 patent and knowledge that the components were especially made for use in an infringing manner.

88.    On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '092 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '092 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components associated with and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '092 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '092 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '092 patent if such assembly and usage took place in the United States. Additionally, Carrier's components are especially made and/or especially adapted for use

in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

89.     On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '092 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '092 patent (or would have infringed if those acts occurred within the United States).

90.     Moreover, on information and belief, Carrier's infringement of the '092 patent has been and continues to be willful and merits enhanced damages.

91.     For example, Carrier has known of the '092 patent and its infringement of the '092 patent as described herein.

92.     On information and belief, since knowing of the '092 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '092 patent.

93.     On information and belief, Carrier has made no attempt to design around the claims of the '092 patent.

94.     On information and belief, Carrier has no reasonable basis for believing that the claims of the '092 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

95.     Zest has been damaged as the result of Carrier's willful infringement.

96.     On information and belief, Carrier will continue to infringe one or more claims of the '092 patent unless and until it is enjoined by this Court.

97.    On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '092 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '092 patent.

**COUNT IV**

**(Infringement of the '093 Patent)**

98.    Zest restates and realleges all the foregoing paragraphs as if fully stated herein.

99.    On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '093 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '093 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '093 patent.

100.    Attached to this Complaint as Exhibit D-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 are met by the Accused Instrumentalities, which is incorporated by reference herein in its entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that the Accused Instrumentalities have met and currently meet the elements of one or more claims of the '093 patent, as discussed herein and in Exhibit D-2.

101.    Carrier's infringement of the '093 patent has also been indirect.

102.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '093 patent under 35 U.S.C. § 271(b) because it has

29

induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '093 patent.

103.    For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation including the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '093 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '093 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '093 patent. Further, Carrier provides information and technical support to their dealerships, customers and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use the Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '093 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '093 patent but took deliberate actions to avoid learning of these facts.

104.    On information and belief, Carrier has been aware of the inventions described and claimed in the '093 patent since its issuance on June 15, 2021, for at least the reasons described above in paragraphs 28-29, 34-35.

105.    On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '093 patent. On information and belief, Carrier obtained this knowledge on or shortly after June 15, 2021. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '093 patent or Carrier was otherwise willfully blind to that fact.

106.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '093 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '093 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '093 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the Accused Instrumentalities in ways that

infringed/infringe the '093 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '093 patent. Carrier supplied and continues to supply these components with knowledge of the '093 patent and knowledge that the components were especially made for use in an infringing manner.

107. On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '093 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '093 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '093 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '093 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '093 patent if such assembly and usage took place in the United States. Additionally, Carrier's components are especially made and/or especially adapted

32

for use in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

108.     On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '093 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '093 patent (or would have infringed if those acts occurred within the United States).

109.     Moreover, on information and belief, Carrier's infringement of the '093 patent has been and continues to be willful and merits enhanced damages.

110.     For example, Carrier has known of the '093 patent and its infringement of the '093 patent as described herein.

111.     On information and belief, since knowing of the '093 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '093 patent.

112.     On information and belief, Carrier has made no attempt to design around the claims of the '093 patent.

113.     On information and belief, Carrier has no reasonable basis for believing that the claims of the '093 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

114.     Zest has been damaged as the result of Carrier's willful infringement.

115.     On information and belief, Carrier will continue to infringe one or more claims of the '093 patent unless and until it is enjoined by this Court.

116.    On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '093 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '093 patent

## COUNT V

### (Infringement of the '094 Patent)

117.    Zest restates and realleges all the foregoing paragraphs as if fully stated herein.

118.    On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '094 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '094 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '094 patent.

119.    Attached to this Complaint as Exhibit E-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 is met by the Accused Instrumentalities, which is incorporated by reference herein in its entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that Carrier's Lynx Fleet system have met and currently meet the elements of one or more claims of the '094 patent, as discussed herein and in Exhibit E-2.

120.    Carrier's infringement of the '094 patent has also been indirect.

121.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '094 patent under 35 U.S.C. § 271(b) because it has

34

induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '094 patent.

122.    For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation including the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '094 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '094 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '094 patent. Further, Carrier provides information and technical support to their dealerships, customers and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use the Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '094 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '094 patent but took deliberate actions to avoid learning of these facts.

123.    On information and belief, Carrier has been aware of the inventions described and claimed in the '094 patent since its issuance on June 15, 2021, for at least the reasons described above in paragraphs 27-28, 36-37.

124.    On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '094 patent. On information and belief, Carrier obtained this knowledge on or shortly after June 15, 2021. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '094 patent or Carrier was otherwise willfully blind to that fact.

125.    On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '094 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '094 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '094 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the Accused Instrumentalities in ways that

infringed/infringe the '094 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '094 patent. Carrier supplied and continues to supply these components with knowledge of the '094 patent and knowledge that the components were especially made for use in an infringing manner.

126. On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '094 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '094 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '094 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '094 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '094 patent if such assembly and usage took place in the United States. Additionally, Carrier's components are especially made and/or especially adapted

for use in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

127.    On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '094 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '094 patent (or would have infringed if those acts occurred within the United States).

128.    Moreover, on information and belief, Carrier's infringement of the '094 patent has been and continues to be willful and merits enhanced damages.

129.    For example, Carrier has known of the '094 patent and its infringement of the '094 patent as described herein.

130.    On information and belief, since knowing of the '094 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '094 patent.

131.    On information and belief, Carrier has made no attempt to design around the claims of the '094 patent.

132.    On information and belief, Carrier has no reasonable basis for believing that the claims of the '094 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

133.    Zest has been damaged as the result of Carrier's willful infringement.

134.    On information and belief, Carrier will continue to infringe one or more claims of the '094 patent unless and until it is enjoined by this Court.

135.     On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '094 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '094 patent.

## COUNT VI

### (Infringement of the '509 Patent)

136.     Zest restates and realleges all the foregoing paragraphs as if fully stated herein.

137.     On information and belief, Carrier has directly infringed and continues to directly infringe one or more claims of the '509 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, selling, offering for sale the Accused Instrumentalities. Carrier has also directly infringed and continues to directly infringe one or more claims of the '509 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Carrier operates and controls the Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the Accused Instrumentalities to perform one or more method claims of the '509 patent.

138.     Attached to this Complaint as Exhibit F-2 is a representative claim chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 are met by the Accused Instrumentalities, which is incorporated by reference herein in its entirety. On information and belief, Carrier's source code and/or other non-public documentation will also confirm that the Accused Instrumentalities have met and currently meet the elements of one or more claims of the '509 patent, as discussed herein and in Exhibit F-2.

139.     Carrier's infringement of the '509 patent has also been indirect.

140.     On information and belief, Carrier has indirectly infringed and continues to indirectly infringe one or more claims of the '509 patent under 35 U.S.C. § 271(b) because it has

induced, and continues to induce, third parties (including dealerships, customers and other end-users), to use the Accused Instrumentalities. Such use by third parties constitutes direct infringement of one or more claims of the '509 patent.

141.    For example, Carrier has supplied, and continues to supply, such induced third parties with product documentation including the Carrier Transicold X4 7700 Operation and Service Manual, the Lynx Fleet user documentation and dashboard help materials, the Lynx Fleet Mobile App, and Carrier's product webpages at carrier.com (including those at carrier.com/container-refrigeration, carrier.com/truck-trailer, and carrier.com/us/en/cold-chain), each of which instructs end-users how to operate the Accused Instrumentalities in a manner that directly infringes at least claim 1 of the '509 patent, or with willful blindness to that fact. On information and belief, Carrier will continue to encourage, aid, or otherwise cause these third parties to, for example, use the Accused Instrumentalities in ways that directly infringe the '509 patent, and Carrier has and will continue to encourage these acts with the specific intent to infringe the '509 patent. Further, Carrier provides information and technical support to their dealerships, customers and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use the Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '509 patent. Alternatively, Carrier has acted with willful blindness to these facts. On information and belief, Carrier knows that there is a high probability that the use of the Accused Instrumentalities constitutes direct infringement of the '509 patent but took deliberate actions to avoid learning of these facts.

142. On information and belief, Carrier has been aware of the inventions described and claimed in the '509 patent since its issuance on June 11, 2024, for at least the reasons described above in paragraphs 27-28, 38-39.

143. On information and belief, Carrier has known that the making and/or using of the Accused Instrumentalities constitutes an act of direct infringement of the '509 patent. On information and belief, Carrier obtained this knowledge on or shortly after June 11, 2024. To the extent Carrier did not have actual knowledge of its infringement, Carrier's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Carrier, therefore, had knowledge that the making and/or using of the Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '509 patent or Carrier was otherwise willfully blind to that fact.

144. On information and belief, Carrier has indirectly infringed and continues to indirectly infringe the '509 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including customer and end users), of at least claim 1 of the '509 patent. For example, Carrier has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) to these third parties with full knowledge of the '509 patent. These third parties have assembled the components to make and use the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the Accused Instrumentalities in ways that

infringed/infringe the '509 patent. Carrier's components were not and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Further, Carrier's components constituted/constitute a material part of the inventions claimed in the '509 patent. Carrier supplied and continues to supply these components with knowledge of the '509 patent and knowledge that the components were especially made for use in an infringing manner.

145.    On information and belief, Carrier has also indirectly infringed and continues to indirectly infringe the '509 patent under 35 U.S.C. § 271(f) by supplying in or from the United States, one or more components of the Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties to combine the components in a manner that would directly infringe at least claim 1 of the '509 patent if such combination occurred within the United States. For example, Carrier has supplied, and continues to supply, such third parties outside of the United States with one or more components of the Accused Instrumentalities (including software components of the Lynx Fleet platform and the APX Control System running on Carrier Transicold refrigeration units) with full knowledge of the '509 patent. These third parties have made or used the Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the Accused Instrumentalities and use them in ways that would infringe the '509 patent if such combination occurred within the United States. Carrier provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '509 patent if such assembly and usage took place in the United States. Additionally, Carrier's components are especially made and/or especially adapted

for use in an infringing manner and Carrier's components were and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

146.    On information and belief, Carrier's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '509 patent. At a minimum, Carrier's conduct demonstrates that Carrier either knew or should have known that the acts of such third parties directly infringed/infringe the '509 patent (or would have infringed if those acts occurred within the United States).

147.    Moreover, on information and belief, Carrier's infringement of the '509 patent has been and continues to be willful and merits enhanced damages.

148.    For example, Carrier has known of the '509 patent and its infringement of the '509 patent as described herein.

149.    On information and belief, since knowing of the '509 patent and its infringement thereof, Carrier has not taken any affirmative steps to avoid infringing the '509 patent.

150.    On information and belief, Carrier has made no attempt to design around the claims of the '509 patent.

151.    On information and belief, Carrier has no reasonable basis for believing that the claims of the '509 patent are either invalid or not infringed by the Accused Instrumentalities and/or or its activities concerning the Accused Instrumentalities.

152.    Zest has been damaged as the result of Carrier's willful infringement.

153.    On information and belief, Carrier will continue to infringe one or more claims of the '509 patent unless and until it is enjoined by this Court.

154.    On information and belief, Carrier has caused and will continue to cause Zest irreparable injury and damage by infringing the '509 patent. Zest will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Carrier is enjoined from infringing the claims of the '509 patent.

## PRAYER FOR RELIEF

WHEREFORE, Zest respectfully requests that this Court:

A.    Enter judgment that Carrier has infringed one or more of the claims of each of the Patents-in-Suit;

B.    Enter an order permanently enjoining Carrier and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Patents-in-Suit;

C.    Award Zest all appropriate damages for the infringement of the Patents-in-Suit, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D.    Award Zest an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E.    Enter judgment that Carrier's infringement of each of the Patents-in-Suit has been deliberate and willful;

F.    Award treble the damages to Zest under 35 U.S.C. § 284 by reason of Carrier's willful infringement of one or more claims of each of the Patents-in-Suit;

G.    Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Zest its attorneys' fees, expenses, and costs incurred in this action; and

44

H.        Award Zest such other and further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Zest requests a jury trial as to all issues that are triable by a jury in this action.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Patrick M. Ryan
Brian A.E. Smith
Andrew C. Ryan
Kenneth Richard
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
Tel:  (415) 956-1900

Dated: July 2, 2026
13021766 / 26169.00001

By:  */s/ David E. Moore*
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Peter T. Sabini (#7655)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com
       psabini@potteranderson.com

*Attorneys for Plaintiff Zest Labs, Inc.*